Leonard R. MORENO, Plaintiff—
Appellant,

v.

Cal TERHUNE, Director; A.A. LE Marque, Warden; J. Tynes; A. Mandeville; D. Indeni; J.W. Luman; T.C. Caton; C. Macugay; J. Esparza, Officer; Faulkner, C.O., Defendants—Appellees.

No. 02–17025.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 4, 2003.*

Decided Dec. 17, 2003.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). All pending motions are DENIED.

Leonard R. Moreno, pro se, Lancaster, CA, for Plaintiff–Appellant.

Anya Binsacca, AGCA—Office of the California Attorney General, San Francisco, CA, for Defendants–Appellees.

Before: BROWNING, O'SCANNLAIN, and FISHER, Circuit Judges.

MEMORANDUM**

Leonard R. Moreno, a California state prisoner, appeals *pro se* the district court's summary judgment in favor of the defendants in his 42 U.S.C. § 1983 action alleging deliberate indifference to his safety, denial of due process, and denial of his free

** This disposition is not appropriate for publication and may not be cited to or by the

exercise of religion. We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's grant of summary judgment, *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997), and we affirm.

I

■ The district court properly granted summary judgment on Moreno's deliberate indifference claim because Moreno failed to present evidence showing that defendants were aware of specific facts from which they could infer that other prisoners posed a substantial risk of serious harm to him. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

II

■ The district court also properly granted summary judgment on Moreno's claim that defendants denied him due process by placing him in administrative segregation after he was attacked. Administrative segregation does not necessarily impose a sufficiently "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that a prisoner has the right to due process when placed therein. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.2003).

In this case, however, we need not decide whether the conditions imposed on Moreno in administrative segregation imposed a hardship sufficient to trigger due process concerns. Even if they did, Moreno received all the process he was due. When placing a prisoner in administrative segregation,

courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

[p]rison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir.1986) (footnote omitted). A hearing within 72 hours of segregation is "within a reasonable time." *Id.* at 1100 n. 20.

Here, Moreno appeared before the prison classification committee two days after his transfer to administrative segregation. The committee stated he had been placed there because he had been "the victim of a stabbing assault." It decided to keep him there and, according to prison records that Moreno does not question, Moreno "stated that he understood and agreed with the committee's action." This process complied with *Toussaint*'s due process requirements.

Prison officials also provided Moreno adequate process while keeping him in administrative segregation. In *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990), we held that review of administrative segregation every 120 days constituted due process. Here, the prison classification committee reviewed Moreno's administrative segregation every 30 days in hearings that Moreno attended.

### III

■ Finally, the district court properly granted summary judgment on Moreno's free exercise claim. "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests."

*Freeman,* 125 F.3d at 736 (footnote omitted). This standard precludes prisoners from reaching trial by only vaguely asserting that prison authorities have impinged upon their free exercise. Moreno failed to identify what religiously-mandated conduct depended on his transfer to a different yard. We are simply not persuaded that the prison's failure to transfer him interfered with his practice of religion.

AFFIRMED.